IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **TERRY JOE BEASLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:17-cv-00726 |
| ) | Judge Aleta A. Trauger |
| **WELLS FARGO BANK, N.A.,** *et al.*, ) | |
| ) | |
| **Defendants** ) | |

## MEMORANDUM

Before the court is the Motion for Judgment on the Pleadings (Doc. No. 8), filed by defendants Wells Fargo Bank, N.A., as Trustee for the Certificate Holders of Park Place Securities, Inc., Asset-Backed-Pass-Through Certificates, Series 2004-MCW1, and Wells Fargo Bank, N.A., individually (collectively referred to herein, in the singular, as Wells Fargo). The plaintiff has responded to that motion, in part, by filing a Motion to Amend the Complaint and by addressing Wells Fargo's arguments as they pertain to the Amended Complaint. (Doc. No. 17.) For the reasons set forth herein, the court will grant leave to amend the Complaint, but finds that the Amended Complaint fails to state a claim for which relief may be granted. The court will therefore grant Wells Fargo's Motion for Judgment on the Pleadings (Doc. No. 8).

Further, although defendant Small Business Administration ("SBA") has apparently never been served with the Complaint (or Amended Complaint), has never entered an appearance, and did not join in the Motion for Judgment on the Pleadings, the court finds that the Amended Complaint does not actually state any claims against the SBA and that the plaintiff lacks standing to assert claims on behalf of SBA against Wells Fargo. The Amended Complaint will therefore be dismissed in its entirety.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

In his Amended Complaint, plaintiff Terry Joe Beasley alleges that he is a resident of Tennessee and owns property known as 2009 College View Drive, Murfreesboro, Tennessee

37130 ("the Property"). He brings suit against defendants Wells Fargo and the SBA based on the allegedly wrongful foreclosure sale of the Property on January 17, 2017.

Even in the Amended Complaint, the plaintiff fails to allege facts that draw much of a connection between Wells Fargo and the foreclosure sale of the Property. The defendants attached to their Answer, by way of background, the June 23, 2004 Fixed Rate Note documenting a loan from Ameriquest Mortgage Company ("Ameriquest") to the plaintiff in the amount of $189,000.000, which he used to purchase the Property. (Note, Answer Ex. 1, Doc. No. 7-1.) Ameriquest recorded a Deed of Trust securing its interest in the Property. (Deed of Trust, Answer Ex. 2, Doc. No. 7-2.) The Deed of Trust provides that the lender may sell its interest in the Note without notice to the borrower. (*Id.* ¶ 20.) On January 8, 2014, Ameriquest "transferred, sold, assigned, conveyed, and set over to" Wells Fargo Bank, N.A., as Trustee for the Certificate Holders of Park Place Securities, Inc., Asset-Backed-Pass-Through Certificates, Series 2004-MCW1, all of Ameriquest's "right, title and interest in and to that certain Deed of Trust." (Transfer and Assignment of Deed of Trust, Answer Ex. 3, Doc. No. 7-3.) Ameriquest also conveyed to Wells Fargo as Trustee the "indebtedness" that is secured by the Deed of Trust. (*Id.*) This "indebtedness" refers to the Note dated June 23, 2004, which is secured by the Deed of Trust. (*See* Deed of Trust, Doc. No. 7-2, at 2; Note, Doc. No. 7-1.)

At the time the plaintiff executed the Note and Deed of Trust, he had already obtained a loan from the SBA ("SBA loan"). (Am. Compl. ¶ 12.) That loan is also secured by the Property. (*Id.*) The plaintiff has made all of the required payments and remains current on the SBA loan. (*Id.*)

On December 14, 2009, SBA and Wells Fargo executed a Limited Subordination Agreement, "which required any proceeds over $100,000 to be paid to the [SBA]" in the event of

a foreclosure sale of the Property.[1] (Am. Compl. ¶ 11; Ltd. Subordination Agreement, Compl. Ex. A, Doc. No. 6-1, at 7–8.[2]) Specifically, pursuant to the Limited Subordination Agreement, the SBA agreed as follows:

> The SBA Deed of Trust and the secured indebtedness described therein, including the lien [against the Property] evidenced by said Deed of Trust, is hereby subordinated to the Wells Fargo Deed of Trust, but only to the extent of the first $100,000.00 of foreclosure proceeds. The SBA is entitled to all proceeds from foreclosure of its Deed of Trust, or other remedies, after the first $100,000.00 is paid to Wells Fargo, up and to the full amount of the indebtedness and obligations secured by the SBA Deed of Trust. In essence, the Wells Fargo Deed of Trust shall be treated as a first priority Deed of Trust, up to the amount of $100,000.00. . . . Wells Fargo may commence foreclosure proceedings, and upon conclusion thereof, the SBA Deed of Trust shall be considered no longer a lien on the Property, provided that any sale proceeds above $100,000.00 are paid to the SBA (which in no event shall exceed the SBA secured indebtedness).

(Subordination Agreement 1–2.)

Although the record does not reveal when or by how much, it is clear that the plaintiff, at some point, fell behind on his mortgage payments to Wells Fargo on the Property. On April 11, 2016, Rubin Lublin TN, PLLC ("Rubin Lublin"), in its role as substitute trustee, sent a "Notice of Acceleration and Foreclosure" to the plaintiff. (Am. Compl. ¶ 8; Notice of Acceleration and Foreclosure, Answer Ex. 4, Doc. No. 7-4.) This Notice advised the plaintiff that the Property would be sold in foreclosure if he did not pay the remaining debt in full. (Am. Compl. ¶ 8.) The Notice also directed the plaintiff to a website that contained "information relative to loss mitigation options and saving [his] home from foreclosure." (Notice of Acceleration and Foreclosure 2.)

On April 18, 2016, April 25, 2016, and May 2, 2016, The Murfreesboro Post published notice of the foreclosure sale of the Property. (Am. Compl. ¶ 9; Notice of Publication, Answer

---

[1] The record does not explain why the Limited Subordination Agreement predates Ameriquest's conveyance of the Deed of Trust to Wells Fargo by some five years.

[2] The proposed Amended Complaint states that the Limited Subordination Agreement is attached to it as Exhibit A, but it is not. It is attached to the original Complaint, however.

Ex. 7, Doc. No. 7-7.) On June 28, 2016, Rubin Lublin sent the plaintiff a Notice of Postponement, informing the plaintiff that the foreclosure sale was postponed to July 11, 2016 at 2:00 p.m. at the courthouse door in Murfreesboro, Tennessee. (Notice of Postponement, Answer Ex. 5, Doc. No. 7-5.)

The Property apparently was not sold on that date, however. Instead, without further notice to the plaintiff or to the SBA, the Property was sold at foreclosure on January 17, 2017. (Am. Compl. ¶ 10.) The plaintiff alleges that, at this sale, Wells Fargo purchased the Property for $100,000. (*Id.*) The actual value of the Property is approximately $175,000. (Am. Compl. ¶ 11.) The plaintiff also points out that the sale took place while a prior federal lawsuit filed by the plaintiff in this court was still pending.[3]

The plaintiff alleges that, "[a]s late as November of 2016," he offered Wells Fargo $110,000 to resolve the debt and have the loan released, but that offer was refused. (Am. Compl. ¶ 13.) However, the plaintiff does not allege that he kept up with his mortgage payments or that he has paid the debt in full.

The plaintiff asserts that, by proceeding with the non-judicial foreclosure sale of the Property on January 17, 2017, without notice to him or to the SBA, Wells Fargo interfered with the contract between the plaintiff and the SBA and deprived the plaintiff and the SBA of approximately $75,000. (Am. Compl. ¶ 14.) He also asserts a claim for "wrongful foreclosure" under Tennessee law, which caused him and the SBA damages in the amount of $75,000. (Am.

---

[3] On June 13, 2016, Plaintiff filed a lawsuit (the "Prior Lawsuit") against Wells Fargo in state court. That action was removed to this court on June 15, 2016. *Beasley v. Wells Fargo*, No. 3:16-cv-1373 (M.D. Tenn.) (June 15, 2016 Notice of Removal, Doc. No. 1; June 13, 2016 Complaint, Doc. No. 1-1). The court granted the defendant's Motion for Judgment on the Pleadings in the Prior Lawsuit and dismissed it without prejudice on January 31, 2017. *Id.* (Doc. No. 23.) In the Memorandum accompanying that Order, the court noted that the record suggested that the postponement of the foreclosure sale resulted from the plaintiff's having filed the Prior Lawsuit alleging wrongful foreclosure.

Compl. ¶¶ 15–23.) He seeks judgment in his favor, as well as an injunction "preventing Defendants or [their] agents from further foreclosure and eviction actions against Plaintiff's home." (Am. Compl., Prayer for Relief ¶ 5, at 7.) In his Response in Opposition to the defendants' Motion for Judgment on the Pleadings, he makes it clear that he is seeking to set aside the foreclosure sale. (Doc. No. 17, at 4.)

## II. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014). "In reviewing a motion for judgment on the pleadings, we construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [him to] relief." *Id.* (internal quotation marks and citations omitted). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

In ruling on a motion under Rule 12(c), the court may look only at the "pleadings." The term "pleadings" includes both the complaint and the answer, Fed. R. Civ. P. 7(a), and "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). It therefore "would seem to follow that if an attachment to an answer is a 'written instrument,' it is part of the pleadings and can be considered on a Rule 12(c) motion for judgment on the pleadings without the motion being converted to one for summary judgment." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Thus, a court deciding a Rule 12(c)

motion may consider documents attached to the answer, as long as they are central to the plaintiff's claim and of undisputed authenticity. *See id.* at 1135 (holding that "the Rule 12(b)(6) incorporation by reference doctrine should apply in Rule 12(c) cases as well"); *accord Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

Here, the defendant attached numerous documents to its Answer. The plaintiff does not contest the authenticity of any of the documents, and he expressly incorporated most of them into the Amended Complaint. The court therefore finds that it may consider the documents attached to the Answer in ruling on the Motion for Judgment on the Pleadings without converting that motion into one for summary judgment.

**III.   DISCUSSION**

The court interprets the Amended Complaint as asserting, or attempting to assert, two claims for relief: (1) a claim for intentional interference with the contract between SBA and the plaintiff; and (2) a claim for wrongful foreclosure. The court will consider each of these in turn.

**A.   Intentional Interference with Contract**

Tennessee law recognizes the tort of intentional interference with business relations. To recover under such a theory, a plaintiff must demonstrate "(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference." *Trau–Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

The plaintiff here alleges that he has an existing business relationship with the SBA and

that Wells Fargo was aware of that relationship. He alleges that Wells Fargo interfered with the contract between the plaintiff and SBA by proceeding with the foreclosure and selling the Property for "substantially less than its fair market value." (Am. Compl. ¶ 14.) He does not, however, allege facts suggesting how the foreclosure sale had any effect on the contract between the plaintiff and the SBA. In fact, the plaintiff alleges that he remains current on the SBA loan. Moreover, he shows that Wells Fargo and the SBA entered into a Limited Subordination Agreement, which provided that "the Wells Fargo Deed of Trust shall be treated as a first priority Deed of Trust, up to the amount of $100,000.00," and authorized Wells Fargo to conduct foreclosure proceedings against the Property. (Subordination Agreement 1–2.) In other words, Wells Fargo's act of conducting the foreclosure sale was authorized by the Limited Subordination Agreement, and it did not affect or interfere with the plaintiff's and the SBA's separate obligations to each other.

Insofar as the plaintiff alleges that the SBA's interests were harmed by the foreclosure sale price or by Wells Fargo's failure to notify the SBA of the actual foreclosure date, the plaintiff lacks standing to assert claims on behalf of the SBA. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]his Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

The court therefore finds that the Amended Complaint does not state a colorable claim for tortious interference.

### B. Wrongful Foreclosure

The plaintiff asserts that the non-judicial foreclosure sale was plagued by a number of irregularities which, together, "combine to produce a 'bid price' substantially below fair market value and are sufficient for this Court to set aside the alleged foreclosure sale." (Am. Compl. ¶ 21.) Specifically, he claims that: (1) the foreclosure sales price was substantially less than the fair market value of the Property; (2) the foreclosure sale did not conform to the statutory

requirements set forth in Tenn. Code Ann. § 35-5-101(f) or the Tennessee Constitution; (3) the sale took place "in the face of a pending lawsuit challenging the validity of the debt and debt collection"; and (4) Wells Fargo purchased the Property for "the exact amount of proceeds which the lender was entitled to" and no more, resulting in no amount being due to the SBA. (Am. Compl. ¶ 20.) The plaintiff appears to seek two alternative remedies in connection with the wrongful foreclosure: (1) to set aside the foreclosure sale or (2) to recover damages (to him and the SBA) "not exceeding $75,000.00." (Am. Compl. ¶ 23.)

Turning first to the plaintiff's contention that the foreclosure sale violated the Tennessee Constitution, such a claim is not tenable, because the Tennessee Constitution offers no private right to relief. *See Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution." (citation omitted)).

Insofar as the plaintiff's wrongful foreclosure claim is based on his allegation that the foreclosure sale price was substantially below the Property's fair market value, the court finds, as a matter of law, that a foreclosure sale price of approximately 57% of the fair market value (based on a foreclosure sale price of $100,000 and alleged fair market value of $175,000) does not give rise to any kind of presumption or even suggestion of irregularity. The Tennessee Supreme Court has expressly recognized that a foreclosure sale price of fifty percent of the fair market value of a property is not unusual, much less conscience shocking or grossly inadequate. *See Holt v. Citizens Cent. Bank*, 677 S.W.2d 414, 416 (Tenn. 1984) ("It seems hardly appropriate for a court to have such a delicate conscience that it is shocked by a sale price of fifty percent when it is well known that property often brings only one-half its true value at a forced sale under the best of circumstances."). The sales price here, which was closer to 60%, therefore does not suggest improper means or motive. Nor does the fact that Wells Fargo bid on and bought the property at the non-judicial foreclosure sale. The Deed of Trust specifically authorized it to do

so. (*See* Deed of Trust ¶ 22 ("Lender or its designee may purchase the Property at any sale.").) Finally, as the defendant points out, the fact that the foreclosure sale took place during the pendency of the Prior Lawsuit is simply irrelevant, since there was no injunction or any other legal prohibition on the lender's decision to proceed with the sale. (See Doc. No. 18, at 3.)

The plaintiff also alleges that he did not receive proper notice of the foreclosure sale as required by Tenn. Code Ann. § 35-5-101(f). That provision authorizes the "adjourn[ment] and reschedule[ing]" of a foreclosure sale, unless it is contractually prohibited and so long as:

> (2) Each postponement or adjournment must be to a specified date and time, and must be announced at the date, time and location of each scheduled sale date; [and]
>
> (3) If the postponement or adjournment is for more than thirty (30) days, notice of the new date, time, and location must be mailed no less than (10) calendar days prior to the sale date via regular mail to the debtor and co-debtor . . . .

*Id.* § 35-5-101(f)(2)–(3). The plaintiff here does not dispute that he received notice of the original setting of the foreclosure sale and notice of the first postponement from May 19, 2016 until July 11, 2016. He alleges that the sale did not take place on that date and that he did not receive notice of the rescheduling of the sale, which ultimately took place on January 17, 2017.

Under Tennessee law, it is clear that "[w]rongful foreclosure can be asserted . . . as a primary cause of action when a mortgagor asserts that a foreclosure action is improper under a deed of trust." *Garner v. Coffee Cnty. Bank*, No. M2014-01956-COA-R3-CV, 2015 WL 6445601, at *10 (Tenn. Ct. App. Oct. 23, 2015) (citing *Overholt v. Merchants & Planters Bank*, 637 S.W.2d 463, 463–67 (Tenn. Ct. App. 1982)). Tennessee courts have historically required "strict compliance with the advertisement and notice terms as provided in the deed of trust." *Fed. Nat'l Mortg. Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. June 24, 2008) (citing *Henderson v. Galloway*, 27 Tenn. 692, 695–96 (Tenn. 1848)). A trustee's failure to comply with the clear terms of the *deed of trust* pertaining to foreclosure will render a subsequent conveyance invalid. *Id.* (citing *Progressive Bldg. & Loan Ass'n v. McIntyre*,

89 S.W.2d 336, 336 (Tenn. 1936)).

Failure to comply with the *statute*, however, does not provide a basis for setting aside a foreclosure sale. Tenn. Code Ann. § 35-5-106. *See also EverBank v. Henson*, No. W2013-02489-COA-R3CV, 2015 WL 129081, at *1 (Tenn. Ct. App. Jan. 9, 2015) ("[T]he mere failure of a trustee to comply with the provisions of Tenn. Code Ann. § 35-5-101 *et seq.* is insufficient to set aside a foreclosure sale."), *perm. to appeal denied* (Tenn. Dec. 15, 2015). The plaintiff here contends only that the foreclosure sale violated the statutory notice requirements, not the terms of the Deed of Trust. Consequently, that allegation does not give rise to a valid basis for setting aside the foreclosure sale.

Citing *EverBank*, the plaintiff argues that the "combined irregularities" in this case "contributed to the inadequate sale price" and thus justify setting aside the foreclosure sale. (Doc. No. 17, at 4.) The Tennessee Supreme Court, indeed, has stated that a foreclosure sale may be set aside if the interested party can show evidence of "irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price." *Holt*, 688 S.W.2d at 416. However, the plaintiff has not alleged actual facts, as opposed to conclusory suppositions, suggesting that the purported irregularities had any effect on the sale price. Moreover, the combined factors upon which the plaintiff relies, taken together or individually, do not suggest any such "irregularity, misconduct, fraud, or unfairness."

In short, the only actual irregularity to which the plaintiff points is Wells Fargo's failure to provide notice of the rescheduled sale date, in violation of Tenn. Code Ann. § 35-5-101(f)(2)–(3). Again, that failure standing alone does not create a basis for setting aside the foreclosure sale. Accordingly, Wells Fargo is entitled to judgment in its favor as a matter of law on the plaintiff's wrongful foreclosure claim, insofar as he seeks to set aside the sale of the Property as a remedy.

Notwithstanding, the law also provides that violation of the notice provisions of the

statute may give rise to a viable claim for *damages*. *See* Tenn. Code Ann. § 35-5-107 (providing that any person who fails to comply with the notice and other provisions of the foreclosure law is "liable to the party injured by the noncompliance, for all damages resulting from the failure"); *see also EverBank*, 2015 WL 129081, at *1 (affirming dismissal of action to set aside foreclosure sale but reinstating damages claim based on the defendant's failure to provide notice to interested party of record).

Here, in addition to seeking to set aside the foreclosure sale, the plaintiff alleges that he suffered damages arising from the defendant's actions:

> By proceeding with the non-judicial foreclosure sale without notice to Plaintiff . . . and "selling" the property for substantially less than its fair market value, Defendants Park Place and Wells Fargo have . . . deprived [the] Plaintiff . . . of approximately $75,000.

(Am. Compl. ¶ 14.) The question is whether the Amended Complaint states a viable claim for damages based on violation of Tenn. Code Ann. § 35-5-101(f).

The plaintiff's claim for damages in the amount of $75,000 appears to be based solely on damages to the SBA resulting from the lack of notice to it. Under the Limited Subordination Agreement, the SBA would have been entitled to recover any amount of the sale price in excess of $100,000. Since the sale price was $100,000, the SBA recovered nothing and missed out on the opportunity to bid on the Property itself. As stated above, however, the plaintiff does not have standing to assert claims on behalf of the SBA, and he does not allege facts showing how the lack of notice caused damages to him. To be clear, the plaintiff does not allege that he did not have notice of acceleration of the mortgage and notice of the lender's intent to foreclose. He knew the foreclosure did not go forward in July 2016 (perhaps because he filed the Prior Lawsuit in June 2016 (*see supra*, note 6)), because he also alleges that, "[a]s late as November 2016, [he] offered to [Wells Fargo] $110,000 to resolve the debt and have the loan released," but Wells Fargo rejected the offer. (Am. Compl. ¶ 13.) However, the plaintiff does not allege that, if he had

received timely and proper notice of the date on which the rescheduled foreclosure would take place, he would have been in a position to avoid the sale by, for instance, submitting payment of entire amount of the indebtedness. Nor does he allege that the SBA would have bid on the Property if it had had notice. In other words, the plaintiff does not allege facts showing that he suffered actual damages resulting from Wells Fargo's failure to provide timely notice of the rescheduled sale.

Under the circumstances, the court finds that the plaintiff fails to state a plausible claim damages based on the statutory violation.

## IV. CONCLUSION

For the reasons set forth herein, the court will grant the plaintiff's motion to amend his Complaint and direct the Clerk to file the Amended Complaint. However, even accepting as true the factual allegations in the Amended Complaint and viewing the facts in the light most favorable to the plaintiff, the court finds that the Amended Complaint fails to state a claim for which relief may be granted. The court will therefore grant Wells Fargo's Motion for Judgment on the Pleadings. Because it is clear that the Amended Complaint does not state a claim against the SBA, which has not been served and did not join in the Motion for Judgment, the Amended Complaint will be dismissed in its entirety. The plaintiff's claim to set aside the foreclosure sale will be dismissed with prejudice, but his claim for damages will be dismissed without prejudice, as it is not clear whether the plaintiff could assert additional facts causally linking the lack of notice to actual damages.

An appropriate Order is filed herewith.

It is so ORDERED.

Enter this 7th day of August 2017.

ALETA A. TRAUGER
United States District Judge